UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,       )
                                )    CRIMINAL ACTION NO.
            Plaintiff,          )    19-10072-DPW
                                )
                                )
v.                              )
                                )
RIGOBERTO RAMIREZ,              )
                                )
            Defendant.          )

MEMORANDUM AND ORDER
July 10, 2020

The Defendant, Rigoberto Ramirez, has been charged in a
multi-count indictment in connection with a series of
convenience store armed robberies, which occurred between late
2017 and early 2018.  Mr. Ramirez has moved to suppress (A)
historical cell site location information the Government
obtained pursuant to a February 23, 2018 court order; and (B)
statements he made to law enforcement on March 13, 2018.

**I. BACKGROUND**

***A.   Relevant Facts***[1]

1.   The Application for the February 23 Court Order

On February 23, 2018, the Government submitted an

---

[1] I find no genuine factual disputes between the parties as to
the material facts concerning this motion.  All relevant facts
are evident in documents of record before me.  Consequently, no
evidentiary hearing is needed to rule on the motion.  *United
States* v. *Staula*, 80 F.3d 596, 603 (1st Cir. 1996) ("A hearing
is required only if the movant makes a sufficient threshold
showing that material facts are in doubt or dispute, and that
such facts cannot reliably be resolved on a paper record.")
(citations omitted).

application under the Stored Communications Act, 18 U.S.C.
§ 2703(d), for a court order to obtain certain telephone records
from AT&T for three cell phone numbers.  [Dkt No. 59, Ex. B].[2]
As relevant here, the Government sought disclosure of
"historical records reflecting the location of cellular towers
(cell site and sector/face) related to the use of [the three
numbers] for the period from November 15, 2017 through February
21, 2018."  *Id.*  Ex. A ¶ 1.  This type of record is commonly
referred to as historical cell site location information
("CSLI").

On February 23, 2018, Magistrate Judge Hennessy ordered
disclosure of the CSLI on the basis of the Application as
amended.  *Id.* Ex. D.  Magistrate Judge Hennessy found that "the
applicant has offered specific and articulable facts showing
that there are *reasonable grounds* to believe that the records
and other information sought are relevant and material to an
ongoing criminal investigation."  *Id.* (emphasis added).

---

[2] The Government originally filed an application on February 22,
2018, [Dkt No. 59, Ex. A], but then filed an amended application
the next day to correct a typographical error in the original
proposed order, *id.* Ex. B.  The amended application, in
substance, incorporated the original.  Magistrate Judge
Hennessy, having issued an order on the basis of the original
application, *id.* Ex. C, issued an amended order on the basis of
the amended application, *id.* Ex. D.  Reference in this
Memorandum will, unless otherwise indicated, be to the operative
"Application" language; *id.* Ex. A, and to the operative order
issued by Magistrate Judge Hennessy, *id.* Ex. D as the relevant
documents supporting the government's initiatives to obtain the
contested cell site location information ("CSLI").

Some four months later, on June 22, 2018, the Supreme Court determined that the "reasonable grounds" standard under § 2703(d) with respect to CSLI was inadequate under the Fourth Amendment. *Carpenter* v. *United States*, 138 S. Ct. 2206 (2018). The Court held that "[t]he Government must generally obtain a warrant supported by *probable cause* before acquiring such records." *Id.* at 2221 (emphasis added).

In support of the Application, the Government averred the following on the basis of an FBI investigation.

At least fourteen convenience store armed robberies occurred around the greater Boston area between December 28, 2017 and February 13, 2018. [Dkt No. 59, Ex. A. ¶ 3]. Through its investigation, the FBI found that the robberies appeared to be committed by the same suspects based on the use of similar clothing, weapons, and patterns of operation. *Id.* ¶ 3-4. The FBI also concluded that the suspects used cell phones in the course of the robberies for coordination. *Id.* ¶ 5.

The FBI identified a suspect named Luis Cintron by tracing the rental vehicles used in the robberies. Based on witness descriptions and surveillance videos, the FBI believed a Nissan Murano was used in the robberies. *Id.* ¶¶ 11, 14, 15, 21. Mr. Cintron was the driver of the vehicle during the relevant time period. *Id.* ¶¶ 21, 22 & 25. Mr. Cintron was later found to be driving another rental vehicle used in some of the later

robberies.  *Id.* ¶¶ 26-27.  His appearance also fit the witness description.  *Id.* ¶ 24.

The FBI identified Mr. Ramirez, the defendant before me, from the cell tower records.  As a result of a January 26, 2018 court order, which is not challenged here, the Government had obtained cell tower log records that showed all wireless devices that registered with, or "hit off," cell towers near the locations and during the general timeframes of the robberies. *Id.* ¶ 23.  Two of the three phone numbers at issue ("Phone-5761" and "Phone-0730") hit off cell towers near six robbery locations, and the other number ("Phone-0257") hit off cell towers near four robbery locations.  *Id.*  Only Phone-5761 was described in the Application as subscribed to by Mr. Ramirez.[3] *Id.*  The Government did not state in the Application how the other two numbers were related to Mr. Ramirez, if at all.

Finally, the FBI connected Mr. Ramirez to Mr. Cintron.  It found that in an "Inmate Web," Mr. Ramirez had listed Mr. Cintron as a "friend," and that an obituary of Mr. Ramirez's brother had reported Mr. Cintron as Mr. Ramirez's uncle.  *Id.* ¶ 24.  Moreover, the Government obtained records that showed Mr. Cintron's phone was in contact with Phone-5761 approximately 154

---

[3] Although the Assistant United States Attorney making the Application stated in the Application that the subscriber of Phone-5761 was Mr. Ramirez, the Government later realized this was incorrect.  *See* [Dkt. 64 at 6 n.3].  This is an immaterial inaccuracy, however, because Mr. Ramirez, in an effort to support standing, concedes that he "possessed and used [Phone-5761] intermittently."  [Dkt No. 66-2].

times between November 15, 2017 and February 19, 2018.  *Id.* ¶
28.  Mr. Cintron's phone was also in contact with Phone-0257
approximately 26 times between January 2 and January 13, 2018.
*Id.*  It was not in contact with Phone-0730.  *Id.*  There is no
other information in the Application that touched upon the
issues raised by Mr. Ramirez in his motion to suppress.

Mr. Ramirez has conceded possession of two of the above
phone numbers in an affidavit filed in support of his Reply to
the Government's Opposition to his motion to suppress.  [Dkt No.
69-1].  His affidavit states that he obtained, possessed, and
used both Phone-5761 and Phone-0257 "intermittently following
[their] activation on December 31, 2017 until [his] arrest in
early February 2018."  *Id.*  His affidavit does not address
Phone-0730.

Mr. Ramirez further contends in his Reply memorandum that
he could not have been using the two cell phones during a
considerable portion of the time period specified in the
Application because of his drug treatment.  [Dkt. 69 at 7].  The
Government has not contested this contention.  The Application
requested CSLI for the period from November 15, 2017 through
February 21, 2018.  It appears Mr. Ramirez was placed in Gosnold
Treatment Center's Miller House from September 18, 2017 through
December 4, 2017.[4]  Memorandum by U.S. Probation Office, *United*

---

[4] Although not made part of the record — or, apparently disputed
by the parties — it bears noting that the policy described on
the website for the Gosnold Treatment Center's Miller House

*States* v. *Ramirez*, Case No. 10-cr-10008-WGY, Dkt. No. 204 (D. Mass. Jan. 9, 2018).  This information was not known to the Assistant United States Attorney in this case at the time the Application was made.  [Dkt. 64 at 14 n.5].

### 2.  March 13, 2018 Statements to Law Enforcement

On March 13, 2018, two Massachusetts State Police Troopers interviewed Mr. Ramirez when he was in custody as a result of a supervised release revocation proceeding then pending on the docket of my colleague, Judge Young.  *United States* v. *Ramirez*, Case No. 10-cr-10008-WGY, Dkt. No. 137 (D. Mass. Feb. 25, 2016) (sentencing the defendant to time served followed by 3 years of supervised release).  He was represented at that time by counsel appearing for the supervised release revocation proceeding.  *Id.* There was as yet no occasion for any counsel to enter an appearance for Mr. Ramirez in this matter.

The troopers filed a report regarding statements Mr. Ramirez made during the interview.  [Dkt No. 59, Ex. E].  They reported that they first read Mr. Ramirez his rights "off of a MSP Miranda Rights Form," and that Mr. Ramirez "refused to sign."  *Id.*  They then told Mr. Ramirez that they were investigating a series of armed robberies.  The report described Mr. Ramirez as immediately becoming "loud and defensive."  *Id.*

provides: "Patients may have cell phones ... but their use is regulated and at the discretion of the Clinical and Program Directors."  *See* http://gosnold.org/wp-content/uploads/2017/06/wtb-miller.pdf (last accessed July 10, 2020).

After the troopers informed him that they knew about Mr.
Cintron, Mr. Ramirez stated that he "hangs out" with Mr.
Cintron.  The troopers reported that Mr. Ramirez further stated
that the government agents would not find his fingerprints at
any robbery or put him holding a gun.  *Id.*  The troopers had not
mentioned a gun in speaking with Mr. Ramirez.  *Id.*  When the
troopers showed Mr. Ramirez pictures of suspects for the
robberies, Mr. Ramirez denied he was among them.  *Id.*  Asked
about his cell phone, Mr. Ramirez stated that he "always has his
phone on him" but he did not know his number.  *Id.*  The
interview ended when Mr. Ramirez stood up and asked to talk to a
lawyer.  *Id.*

## B.   *Procedural History*

Mr. Ramirez was indicted in this matter on February 28,
2019 and charged with two counts of Hobbs Act robbery in
violation of 18 U.S.C. § 1951.  [Dkt. 1].  He was arrested on
March 28, 2019.  The Government filed a superseding indictment
[Dkt. 29] on October 24, 2019, charging Mr. Ramirez with eleven
counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951
(Counts 1-11), one count of conspiracy to commit Hobbs Act
robbery in violation of 18 U.S.C. § 1951 (Count 12), and one
count of using, carrying, and discharging a firearm during a
crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii)
(Count 13), referencing the robbery charge in Count 7.  Mr.
Ramirez moved [Dkt. 57] on January 31, 2020 to suppress (A) the

CSLI the Government obtained pursuant to the February 23, 2018
court order; and (B) the statements he made to the state police
on March 13, 2018.

## II. ANALYSIS

### A. *Historical Cell Site Location Information ("CSLI")*

When Magistrate Judge Hennessy issued the February 23, 2018
court order authorizing the Government to obtain the historical
CSLI of the three phone numbers under the Stored Communications
Act, the statute by terms allowed courts to order disclosure of
cell phone records from service providers if "the governmental
entity offers specific and articulable facts showing that there
are reasonable grounds to believe that [the records sought] are
relevant and material to an ongoing criminal investigation."  18
U.S.C. § 2703(d).  The Supreme Court decided four months later
that this "reasonable grounds" standard[5] is inadequate under the
Fourth Amendment as applied to CSLI.  *Carpenter* v. *United
States*, 138 S. Ct. 2206, 2221 (2018).  The Court held that "the
Government must generally obtain a warrant supported by *probable
cause* before acquiring [CSLI]."  *Id*. (emphasis added).

---

[5] As the Court recognized in *Carpenter* v. *United States*, the
"reasonable grounds" standard under § 2703(d) "falls well short
of the probable cause required for a warrant."  138 S. Ct. 2206,
2221 (2018).  Courts have held that the § 2703(d) "reasonable
grounds" standard "in essence is a reasonable suspicion
standard" akin to that applied in stop-and-frisk cases.  *United
States* v. *Daniels*, 803 F.3d 335, 351 (7th Cir. 2015) (citing
*Application of the United States of America for an Order
Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 287 (4th
Cir. 2013)).

Mr. Ramirez contends that the CSLI at issue here must be suppressed because the Application did not demonstrate probable cause as required under *Carpenter*.  *Id.*  He further argues that the Application failed to satisfy even the lower § 2703(d) "reasonable grounds" standard as to the CSLI prior to December 28, 2017, the date of the first robbery described in the Application.  The Government responds that the Application, in fact, demonstrated probable cause.  The Government further argues that because it relied in good faith upon an order issued under a statute later held to be unconstitutional, the evidence should not be suppressed.

I am satisfied the Application met the probable cause standard.  Moreover, I agree with the Government that the good faith exception would apply in any event.

1.   Standing

Before I address whether there was probable cause, I must address the threshold question whether Mr. Ramirez has established standing to challenge the search under the Fourth Amendment.  This requires a determination whether Mr. Ramirez "ha[d] a reasonable expectation of privacy" in the CSLI of the three numbers at issue.  *United States* v. *Lewis*, 40 F.3d 1325, 1333 (1st Cir. 1994) (citation omitted).  Because "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," *Carpenter*, 138 S. Ct. at 2217, "historical use of" the phone numbers, which

9

produced the CSLI, necessarily satisfies the standing requirement for an individual whose CSLI records have been seized. *United States* v. *Aguirre,* 839 F.2d 854, 856 (1st Cir. 1988); *see also United States* v. *Herron*, 2 F. Supp. 3d 391, 401 (E.D.N.Y. 2014) (holding that despite the phone being subscribed to a fictitious person, the defendant had standing to challenge disclosure of CSLI when he "*possessed*, *used*, and *acknowledged ownership* of the phone") (emphasis in original).

Mr. Ramirez contends that he obtained, possessed, and used two of the phones — Phone-5761 and Phone-0257 — intermittently between December 31, 2017 and his arrest on the supervised release violation. [Dkt. 69-1 ¶¶ 3, 4].[6]  Mr. Ramirez's affidavit is sufficient to establish a legitimate expectation of privacy in the CSLI of those two phones during that period.  The Government requested the CSLI for the period from November 15, 2017 through February 21, 2018.  Mr. Ramirez hence has standing to challenge the obtained CSLI of Phone-5761 and Phone-0257 after December 30, 2017.

His affidavit, however, does not mention anything regarding the third number (Phone-0730).  Mr. Ramirez, nevertheless, argues that he has standing because the Government intends to

---

[6] Although Mr. Ramirez's affidavit states his arrest date to be "early February 2018," [Dkt. No. 69-1 ¶¶ 3, 4], the docket for his supervised release proceeding reports the exact date Mr. Ramirez was arrested in connection with the alleged supervised release violation considered by Judge Young was March 5, 2018. *United States* v. *Ramirez*, Case No. 10-cr-10008-WGY, Dkt. No. 216 (D. Mass. Mar. 5, 2018).

introduce the CSLI of Phone-0730 at trial against him.  [Dkt. No. 69 at 2].  Mr. Ramirez relies on a recent case in which the government applied for a warrant to obtain a phone's geolocation data to confirm the user of that phone was the defendant. *United States* v. *Cardona*, 411 F. Supp. 3d 113, 115 n.1 (D. Mass. 2019) (holding that "[government] cannot offer that data to prove Defendant's use of the phone and simultaneously prevent Defendant from challenging the validity of the search producing that data").

Judge Hillman's holding in *Cardona* was based on the fact that the geolocation data there, combined with other evidence, already "showed Defendant in the same location as the phone." *Id.*  In other words, the data would likely prove the defendant's use of the phone, which necessarily entails his privacy expectation in the record of his movement.  Judge Hillman held that "[u]nder [such] circumstances," the defendant was able to establish standing without claiming ownership or use himself. *Id.*

This case is distinguishable from *Cardona*.  The Government here only indicates that it plans to introduce the CSLI of Phone-0730 as evidence of the pattern of robberies without attributing the use of the phone to Mr. Ramirez.  Mr. Ramirez himself does not reference any evidence which, in combination with the CSLI, may show his use of Phone-0730.  Subject to further refinement through motion in limine or other trial-based

motion practice, I may permit the Government to introduce Phone-0730's CSLI at trial to prove facts other than use by Mr. Ramirez, which do not necessarily implicate any privacy expectation in movement.  *Cf. United States* v. *Gomez*, 770 F.2d 251, 254 (1st Cir. 1985) (holding that Government could present evidence at trial showing "*possessory* interest in goods seized," which was not necessarily entitled to Fourth Amendment protection, but at the same time oppose before trial that defendant had any "*privacy* expectation" so long as the same evidence was known to defendant) (emphasis in original).  In any event, Mr. Ramirez "bears the burden of persuasion" as to standing, *Lewis*, 40 F.3d at 1333, and he fails to carry it here with respect to the CSLI of the third number, Phone-0730.

In short, I conclude Mr. Ramirez has standing to challenge the CSLI only as to Phone-5761 and Phone-0257 after December 30, 2017.  I now proceed to analyze whether there was probable cause in the Application to obtain the CSLI of these two numbers.

2.   Probable Cause

To demonstrate probable cause, "[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed — the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched — the so-called 'nexus' element." *United States* v. *Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005) (internal quotations).  The nexus element requires the judge to make "a practical common

12

sense decision whether, given all the circumstances set forth in
the affidavit before [him], ... there is a fair probability that
[] evidence of a crime will be found in a particular place."
*Id*. (quoting *Illinois* v. *Gates*, 462 U.S. 213, 238 (1983)).  "The
probable-cause nexus between enumerated evidence of the crime
and the place can be inferred from the type of crime, the nature
of the items sought, the extent of an opportunity for
concealment and normal inferences as to where a criminal would
hide [evidence of a crime]."  *Id*. (internal quotations omitted)
(alteration in original).

It bears emphasizing that "[i]n dealing with probable cause
. . . as the very name implies, we deal with probabilities.
These are not technical; they are the factual and practical
considerations of everyday life on which reasonable and prudent
men, not legal technicians, act."  *Gates*, 462 U.S. at 231
(internal quotations omitted).[7]

---

[7] The Supreme Court has recently reiterated that the parallel
term "reasonable suspicion" is "an 'abstract' concept that
cannot be reduced to 'a neat set of rules,'" and observed that
it had "repeatedly rejected courts' efforts to impose a rigid
structure on the concept of reasonableness."  *Kansas* v. *Glover*,
140 S. Ct. 1183, 1190 (2020) (quoting *United States* v. *Arvizu*,
534 U.S. 266, 274 (2002)).  The Court held that a rule
"preclud[ing officers] from drawing factual inferences based on
the commonly held knowledge they have acquired in their everyday
lives" would do precisely that.  *Id*.  In this respect, probable
cause and reasonable suspicion rest on the same conceptual
foundations because both "are commonsense, nontechnical
conceptions that deal with 'the factual and practical
considerations of every day life on which reasonable and prudent
men, not legal technicians, act.'"  *Ornelas* v. *United States*,
517 U.S. 690, 695 (1996) (quoting *Illinois* v. *Gates*, 462 U.S.
213, 231 (1983)).  The "only difference [between them is] the

Whether there was probable cause to obtain the CSLI of the phones Mr. Ramirez concedes he obtained, possessed and used is the precise issue before me.  While the Application plainly satisfied the commission element since it described a series of robberies, the nexus between evidence of crime and the CSLI of the two phones was less obvious.  Nevertheless, given all the circumstances and approaching the probable cause determination in a common-sense fashion, I conclude that the nexus existed for both phones.

Most significantly, Phone-5761 hit off cell towers near the locations and during the timeframes of six of the robberies. Phone-0257 hit off cell towers with respect to four of the robberies.  To be sure, mere proximity to crime scenes may not itself be sufficient to establish probable cause.  *Ybarra* v. *Illinois*, 444 U.S. 85, 91 (1979).  Moreover, I observe in this regard that Mr. Ramirez lived near Lynn, where three of the six hits by Phone-5761 and three of the four hits by Phone-0257 occurred.  [Dkt. 64 at 12].  But the specific locations and exact times, when mapped on the location and timing of these robberies, enhances the showing that both phones were involved in those crimes.  As the Government points out, on the two dates when there were two robberies in different towns each night,

---

level of suspicion that must be evaluated"; reasonable suspicion demands less than the "fair probability," required for probable cause, that evidence of crime will be found.  *Alabama* v. *White*, 496 U.S. 325, 330-31 (1990).

Phone-5761 hit off cell towers near all four locations — Lynn
and East Boston on January 2, 2018, and Malden and Everett on
January 17, 2018.  Similarly, as to Phone-0257, there was one
night, January 2, 2018, when two robberies occurred in two
towns, and the phone hit off cell towers near both locations —
Lynn and East Boston.

In addition to the cell tower data, the Government tied
both numbers to Mr. Cintron, whose own involvement in the
robberies was supported by ample evidence in the Application.
Phone-5761 was in contact with Mr. Cintron's phone 154 times
between November 5, 2017[8] and February 19, 2018 (about 1.58 times
per day).  Further, the FBI found that Mr. Ramirez listed Mr.
Cintron as his uncle and a person he described as a "friend,"
indicating their close personal relationship.  Phone-0257 was in
contact with Mr. Cintron's phone 26 times between January 2 and
13, 2018 (about 2.2 times per day), the exact time period during
which the number hit off cell towers near the robberies four
times.

Telephone contacts or a personal relationship with Mr.
Cintron, standing alone, may not provide probable cause.  *See*

---

[8] I note that precise dates are not identified, and so whether
the calls were within the period for which Mr. Ramirez had
standing and thus may be relevant to him is not clear from the
record.  Of course, if the timing of any of these robberies is
inconsistent with the undisputed evidence concerning Mr.
Ramirez's whereabouts, *see, e.g. supra* at 5-6 & note 4, the
evidence will be subject to limitations on its admissibility at
his trial.  *Supra* at 11-12.

*United States* v. *One Lot of United States Currency*, 103 F.3d 1048, 1054-55 (1st Cir. 1997) ("Association with known criminals, without more, is, of course, not enough to establish probable cause."). But taken together with the multiple hits off cell towers and the frequent communication with the main suspect, I find the evidence establishes a fair probability that it was not "an incidental or fortuitous connection" that Phone-5761 and Phone-0257 were used near the reported robberies. *United States* v. *1933 Commonwealth Avenue*, 913 F.2d 1, 3 (1st Cir. 1990). Since all fourteen robberies were credibly presented as having been committed by the same group of people, a search of the CSLI for both phones ranging from December 31, 2017 (the earliest date when Mr. Ramirez can assert standing) to February 21, 2018 (three days after the last robbery and well before the last date as to which Mr. Ramirez could assert standing, March 5, 2018 — the date of his arrest on the supervised release violation) would likely result in evidence of the crimes, including more detailed whereabouts that could confirm his participation in the robberies. I further find that there was probable cause to justify a search of the CSLI to uncover related post-robbery activity relevant to a robbery committed within the three days following the last robbery alleged here.

In sum, to the extent that Mr. Ramirez has standing, the Application demonstrated probable cause to obtain the CSLI.

<u>3.</u>    <u>Good Faith Exception</u>

The Government argues that even if the Application did not show probable cause required under *Carpenter*, it obtained the CSLI in objectively reasonable reliance on an apparently valid statute.  Thus, as an alternative basis for denial of Mr. Ramirez's motion to dismiss, the Government relies on the good faith exception to the exclusionary rule under *Illinois v. Krull*, 480 U.S. 340 (1987).[9]  I agree.

Of course, "[w]hen evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Krull*, 480 U.S. at 347 (citing *Weeks* v. *United* States, 232 U.S. 383 (1914)).  But because "the rule's sole purpose [] is to deter future Fourth Amendment violations" by law enforcement and it incurs "substantial social costs," the Supreme Court has carved out a good faith exception in situations where the prospect of increased deterrence of governmental conduct does not outweigh the costs.  *Davis* v. *United States*, 564 U.S. 229, 236-38 (2011) (citing *United States* v. *Leon*, 468 U.S. 897 *passim* (1984)).  In

---

[9] A more particularized ground for the good faith exception is available because the court order authorizing the disclosure of CSLI was issued by "a neutral and detached magistrate." *United States* v. *Leon*, 468 U.S. 897, 913 (1984); *see also United States* v. *Letellier*, No. 13-10309-GAO, 2015 U.S. Dist. LEXIS 142432, at *8 (D. Mass. Oct. 20, 2015) (applying *Leon* to hold that government "was entitled to rely on the legal judgment of a neutral magistrate" to obtain the CSLI under § 2703(d)).

*Krull*, the Court applied the good faith exception when the government obtained evidence "in objectively reasonable reliance on a statute" that was later declared unconstitutional because "[p]enalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."   480 U.S. at 349 (citing *Leon*, 468 U.S. at 921) (internal quotation marks omitted) (alteration in original).

It is objectively reasonable for the government agents and government attorneys to rely on a statute unless the statute is "clearly unconstitutional" — either because "the legislature wholly abandoned its responsibility" in passing the statute, or because "its provisions are such that a reasonable officer should have known that the statute was unconstitutional."   *Id.* at 355.   Here, Mr. Ramirez does not suggest that Congress abandoned its duty to act constitutionally in enacting the Stored Communications Act in 1986.   Instead, he argues only that the Government should have known that § 2703(d) as applied to CSLI was unconstitutional when it filed the Application.

In advancing that argument, Mr. Ramirez contends that technological advances and existing case law should have alerted the Government that § 2703(d) was unconstitutional as a means for obtaining CSLI.   I disagree.   There was no binding precedent from the First Circuit at the time suggesting § 2703(d) was unconstitutional.   Moreover, before the Application was

tendered, my colleagues on this court had consistently upheld the constitutionality of § 2703(d) with respect to CSLI.  *See, e.g., In re Application of United States for Order Pursuant to 18 U.S.C. 2703(d)*, 849 F. Supp. 2d 177 (D. Mass. 2012). Magistrate Judge Collings had, for example, sensibly concluded that "[u]ntil either the First Circuit Court of Appeals or the Supreme Court rule otherwise, or Congress enacts legislation dealing with the problem, [he would] follow the ruling of Judge Stearns in the case of [*In re United States Orders pursuant to 18 U.S.C. 2703(d)*, 509 F. Supp. 2d 76 (D. Mass. 2008)] and not require a showing of probable cause before issuing an Order pursuant to § 2703(d) authorizing the acquisition of records containing historical cell site information."  *Id.* at 179.

Other circuits that had weighed in prior to the Supreme Court's decision in *Carpenter* uniformly concluded that § 2703(d) was constitutional, even in light of the many technological advances in this area.[10]  *See, e.g., United States* v. *Thompson*, 866 F. 3d 1149, 1158 (10th Cir. 2017) (issuing decision after *certiorari* was granted in *Carpenter* and holding, in agreement

---

[10] Although the petitioner in *Carpenter* claimed there was a circuit split, the only decision cited to support the other side was decided on statutory interpretation grounds rather than under the Fourth Amendment.  Pet. for a Writ of Cert. at 22, No-16-402 (Sept. 26, 2016) (citing *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 319 (3d Cir. 2010)(affirming decision that the § 2703(d) standard was lower than probable cause, but holding that "the statute as presently written gives the [magistrate judge] the option to require a warrant showing probable cause" when privacy interests were implicated)).

with all other circuits,[11] that CSLI was governed by the third-party doctrine under applicable Supreme Court precedents and hence implicated no privacy interests under the Fourth Amendment).  Finally, I observe the Supreme Court itself was sharply divided in *Carpenter* and, as the majority opinion recognized, the issue of CSLI "does not fit neatly under existing precedents."  138 S. Ct. at 2209.

That courts in multiple circuits had upheld the statute, before the Supreme Court grappled with it, satisfies me that the Government had no meaningful objective reason to doubt, at the time the Application was made, the constitutionality of the "reasonable grounds" standard included in the Stored Communications Act.  Thus, the good faith exception applies to the CSLI here.

In this regard, my conclusion accords with every other circuit to have addressed the issue since *Carpenter.*  Courts have consistently held that the Government's reliance on § 2703(d) to obtain CSLI pre-*Carpenter* was done in good faith.[12] *See, e.g.*, *United States* v. *Carpenter*, 926 F.3d 313 (6th Cir.

---

[11] Other circuit cases include *United States* v. *Graham*, 824 F. 3d 421 (4th Cir. 2016) (en banc); *Carpenter* v. *United States*, 819 F. 3d 880 (6th Cir. 2016); *United States* v. *Davis*, 785 F. 3d 498 (11th Cir. 2015) (en banc); *In re Application of U.S. for Historical Cell Site Data*, 724 F. 3d 600 (5th Cir. 2013).
[12]  Mr. Ramirez attempts to distinguish these circuit decisions by arguing that although the Application here was filed before *Carpenter*, it was made after the Supreme Court granted *certiorari* and conducted oral argument.  This, he says, should have put the Government "on notice" that the constitutionality of the statute was called into question.  But the grant of

2019) (on remand, affirming that the "Government acquired
Carpenter's CSLI in good faith reliance on the [Stored
Communication Act]"); *United States* v. *Korte*, 918 F.3d 750, 758
(9th Cir.), cert. denied, 140 S. Ct. 264 (2019) ("[I]t is hardly
objectively unreasonable to rely on a then-lawful [Stored
Communications Act] when courts were upholding it or similar
legislative schemes."); *United States* v. *Curtis*, 901 F.3d 846,
849 (7th Cir. 2018) (rejecting the argument that applying *Krull*
to CSLI obtained pre-*Carpenter* would have the effect of chilling
future constitutional challenges).

### 4.   "Reasonable Grounds" Standard Under § 2703(d)

Having concluded that the good faith exception applies in
theory, I normally find no occasion to analyze the Application
under the § 2703(d) "reasonable grounds" standard because the

---

*certiorari* has no effect on the Government's good faith
reliance.  It is well settled that "[t]he grant of certiorari on
an issue does not suggest a view on the merits." *Schwab v.
Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007) (per
curiam) ("We don't know how the Supreme Court is going to decide
the issues on which it has granted review in the [other] case,
and the Supreme Court itself probably does not know given the
fact that briefing has not even been completed in that case.").
Indeed, as I have observed, the Tenth Circuit issued its
decision upholding the constitutionality of the Stored
Communications Act as to CSLI despite the Supreme Court's
decision to grant *certiorari* in *Carpenter*.  *Thompson*, 866 F.3d
at 1159 ("At this point, however, we can only speculate how the
Supreme Court will address these concerns, now that it has taken
up the question of historical CSLI by granting certiorari in
*Carpenter*.").  The grant of *certiorari* cannot put the Government
on notice, in relying on a statute whose validity it otherwise
had no reason to doubt, that it would be acting in any other way
than good faith.  *Krull* has made it clear that the inquiry of
the Government's reasonable reliance "is an objective one."  480
U.S. at 355.

finding of "probable cause" perforce satisfied the lower "reasonable grounds" standard as to the CSLI it sought.  But I must also note the alternative grounds for denying the motion that suppression of evidence is not an available remedy for Mr. Ramirez.

The Stored Communications Act provides a narrow list of exclusive relief for statutory violations of the Act and that list does not by terms include suppression of evidence.  *See* 18 U.S.C. § 2707(b) (listing three forms of "appropriate relief": "equitable or declaratory relief," "damages," and "a reasonable attorney's fee and other litigation costs reasonably incurred"); 18 U.S.C. § 2708 (specifying that "[t]he remedies and sanctions described in this chapter are the *only* judicial remedies and sanctions for *nonconstitutional* violations of this chapter") (emphasis added); *compare* 18 U.S.C. § 2515 (suppression explicitly provided as a remedy for violation of the Wiretap Act).  Courts of Appeals have held "there is no exclusionary rule generally applicable to statutory violations." *United States* v. *Clenney*, 631 F.3d 658, 667 (4th Cir. 2011) (quoting *United States* v. *Abdi*, 463 F.3d 547, 556 (6th Cir. 2006) (internal quotation marks omitted)); *see also Davis*, 564 U.S. at 237 (noting that the exclusionary rule "is a 'prudential' doctrine created by [the Supreme Court] to 'compel respect for the constitutional guaranty,'" and its "sole purpose [] is to deter future Fourth Amendment violations") (citation omitted).

Here, Mr. Ramirez contends that only the CSLI prior to December 28, 2017, the date of the first robbery, was unlawfully obtained under § 2703(d).  As discussed above, however, Mr. Ramirez does not have standing to challenge any CSLI before December 31, 2017 under the Fourth Amendment.  In other words, Mr. Ramirez has no constitutional claim as to the CSLI prior to December 31, 2017 regardless of the good faith exception.  Even assuming that Mr. Ramirez is correct that the Government failed to satisfy the § 2703(d) "reasonable grounds" standard as to the CSLI prior to December 28, 2017, this would only amount to a statutory violation of the Stored Communications Act.  It is therefore questionable whether Mr. Ramirez can seek suppression of evidence as a remedy for that violation.  *See United States* v. *Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014) (holding that for defendant to suppress the CSLI, "he [] must show that the cell site location data was obtained not just in violation of the Act, but also in violation of the Fourth Amendment").

Mr. Ramirez's motion to suppress must be denied because I have found no violation of the Stored Communications Act's lower "reasonable grounds" standard.

B. *Statements Made to Law Enforcement on March 13, 2018*

Mr. Ramirez has also moved to suppress the statements he made to the two Massachusetts State Troopers on March 13, 2018. He argues that the state police violated his Sixth Amendment right to counsel when the troopers questioned him alone while in

custody in connection with his supervised release proceedings before Judge Young.  Because the Sixth Amendment right to counsel is specific to the offense for which counsel is engaged and Mr. Ramirez's Sixth Amendment rights as to the present charges had not attached at the time of questioning, I must deny the motion to suppress his statements.

The Sixth Amendment right to counsel "does not fasten itself irremovably from an incriminating statement, making that statement either admissible or inadmissible for all time." *United States v. Bender*, 221 F.3d 265, 270 n.5 (1st Cir. 2000). Rather, it "is offense specific." *Texas* v. *Cobb*, 532 U.S. 162, 167 (2001) (internal quotation omitted).  When the state knowingly circumvents the right to counsel to seek evidence, "incriminating statements pertaining to pending charges are inadmissible at the trial of *those charges*." *Maine* v. *Moulton*, 474 U.S. 159, 180 (1985) (emphasis added).  "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of *those offenses*." *Id.* at n.16. (emphasis added). In other words, "the same statements can be given differing constitutional status" depending on which offenses they pertain to and whether the Sixth Amendment right had attached as to those offenses.  *Bender*, 221 F.3d at 270 n.5.

The Government intends to introduce the statements Mr. Ramirez made on March 13, 2018 at his trial of the charges now

pending before me.  Those statements pertain to the present offenses as to which Mr. Ramirez was first charged on February 28, 2019.  That Mr. Ramirez was facing different charges back when he was in custody is of no import here.  Of course, the circumstances of that time in custody may be subject to limitations or inadmissibility at trial.  But the only question before me now is whether the Sixth Amendment right as to the present charges had attached at the time of questioning on March 13, 2018.  And the answer to that question is "no."

The Sixth Amendment right to counsel does not attach until "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction." *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 213 (2008).  "[It] becomes applicable only when the government's role shifts from investigation to accusation through the initiation of adversary judicial proceedings." *Moran* v. *Burbine*, 475 U.S. 412, 414 (1986).  Mr. Ramirez was interviewed by law enforcement on March 17, 2018.  There had been no "initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment" at that point with respect to the present robbery-related charges. *Rothgery*, 544 U.S. at 198 (internal quotation marks omitted).  The Government did not indict Mr. Ramirez for the present charges until almost a year later.  The statements he challenges in the motion before

me were made at an early stage of a criminal investigation, during which no Sixth Amendment right had attached to the offenses ultimately charged.   I therefore conclude that because the right to counsel as to the present charges had not attached when Mr. Ramirez spoke to the state troopers on March 13, 2018, the statements he challenges will not be suppressed in this case.

### III. CONCLUSION

For the reasons set forth more fully above, I DENY Mr. Ramirez's motion [Dkt. No. 57] to suppress either or both the CSLI obtained by the Government and his statements made to the state police.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE